**SO ORDERED: October 14, 2008.**



_____
**James K. Coachys
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| DONALD RIGGIN, II and | ) | Case No. 04-12285-JKC-13 |
| MICHELLE RIGGIN, | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| DONALD RIGGIN, II and | ) | |
| MICHELLE RIGGIN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 08-50319 |
| | ) | |
| DEUTSCHE BANK TRUST COMPANY | ) | |
| AMERICAS and SAXON MORTGAGE | ) | |
| SERVICES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

This matter came before the Court on Defendants Deutsche Bank Trust Company Americas and Saxon Mortgage Services, Inc.'s (collectively, the "Defendants") Motion to Dismiss (the "Motion") the Complaint filed against them by Plaintiffs/Debtors Donald Riggin, II and Michelle

Riggin ("Debtors").[1]

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court examines the sufficiency of the complaint, not the merits of the lawsuit. Fed.R.Civ.P. 12(b)(6); *United States v. Clark County, Ind.,* 113 F.Supp.2d 1286, 1290 (S.D.Ind.2000). The question under Rule 12(b)(6) is whether there is any set of facts consistent with the plaintiff's allegations that would give rise to a right to relief. The court will dismiss a complaint for failure to state a claim only if it "'appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Hamlin v. Vaudenberg*, 95 F.3d 580, 583 (7th Cir.1996) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Hutchinson ex rel. Baker v. Spink,* 126 F.3d 895, 900 (7th Cir.1997) ("It is enough if the complaint puts the defendants on notice of the claim and that some set of facts could be presented that would give rise to a right to relief."). In making its determination, the court accepts the allegations in the complaint as true and draws all reasonable inferences in favor of plaintiffs. *Mallett v. Wisconsin Div. of Vocational Rehab.,* 130 F.3d 1245, 1248 (7th Cir. 1997); *Porter v. DiBlasio,* 93 F.3d 301, 305 (7th Cir.1996).

The facts, as alleged in the Complaint, show the following: On May 22, 2002, Plaintiffs executed an adjustable rate promissory note and an addendum to the promissory note (collectively, the "Note") in favor of NovaStar Mortgage Inc. The Note was secured by a mortgage and adjustable rate rider (collectively, the "Mortgage") on their residence in Gwynneville, Indiana (the "Residence"). Sometime thereafter, NovaStar assigned the Note and Mortgage to Deutsche Bank

---

[1] The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157.

Trust Company Americas ("Deutsche Bank"). On February 5, 2004, the Defendants filed a foreclosure action against Debtors in Shelby County, Indiana. On June 16, 2004, Deutsche Bank, by its servicer, Saxon Mortgage Services, Inc. ("Saxon"), filed a complaint against Debtors to obtain a judgment against them on the Note and to foreclose the Mortgage. The Defendants ultimately obtained summary judgment in their favor, granting them both a personal judgment against the Debtors in the amount of $85,917.53 and a decree of foreclosure (the "Judgment"). Consistent with the Judgment, the Defendants praeciped the Shelby Circuit Court on June 24, 2004, to sell the Residence. Debtors filed their Chapter 13 petition on July 7, 2004, thereby staying the foreclosure sale. The Defendants received notice of the bankruptcy case.

On September 10, 2004, Debtors filed an Amended Plan, which was confirmed by the Court on October 14, 2004. Through the Amended Plan, Debtors were to pay pre-petition arrears in the amount of $8,735.28 at 8 percent interest and were also to continue making "monthly mortgage payments" "outside the plan" directly to the Defendants.

On August 3, 2004, the Defendants filed a Proof of Claim (the "Claim") in the amount of $88,099.42. Debtors did not object to the Claim. The Defendants also mailed several written notices to Debtors indicating upward adjustments to the interest rate payable under the Note and Mortgage. On November 1, 2007, the Defendants also provided an accounting to Debtors of the amount owed under the Note and Mortgage. On May 1, 2008, Debtors, through their counsel, asked the Defendants to provide them with a pay-off balance. The Defendants complied with that request on May 20, 2004. Both of those accountings reflected the increases to upward adjustments to the interest rate payable under the Note and Mortgage.

**Count I**:  **Willful Violation of the Stay**

In Count I of their Complaint, Debtors allege that the "actions of the Defendants as alleged in paragraphs 20 and 21 are gross violations of the stay." They further allege that by their actions, the Defendants have violated the "discharge order" and 11 U.S.C. § 524.

As the Defendants point out in their Motion to Dismiss, paragraphs 20 and 21 do not allege *any* actions by the Defendants.[2]  Despite this obvious error, in responding to the Defendants' Motion, Debtors did not clarify which paragraphs in their Complaint they intended to reference.  It is not the Court's job to guess or otherwise divine that information.  Furthermore, Debtors have not yet received a discharge and, thus, any claim that the Defendants have violated the discharge injunction is clearly premature.  Accordingly, the Court grants the Defendants' Motion with respect to Count I.

**Counts II and Count III:  Offenses Against Property of Debtors and
Violation of the Fair Debt Collection Practices Act**

In Count II, Debtors claim that the Defendants converted their property by failing to apply certain payments to Debtor' property taxes.  In Count III, Debtors claim that various actions by the Defendants violated the Fair Debt Collections Practices Act ("FDCPA").  Both counts rest on the premise that the Debtors' post-petition obligations to the Defendants are defined by, and limited to, the Judgment and not the Note and Mortgage.  This premise is, as a matter of law, patently incorrect.

Per the terms of their confirmed Plan, Debtors agreed to cure their pre-petition defaults and to continue making post-petition "monthly mortgage payments" to the Defendants.  Debtors were permitted to include such a provision in their Plan by virtue of 11 U.S.C. § 1322, which provides

---

[2] Paragraph 20 of the Complaint states: "On September 10, 2004, the Debtors filed their Amended Plan ("Plan") which is attached as Exhibit E."  Paragraph 21 states: "On October 14, 2004, the Court issued its Order confirming the Plan."

4

in pertinent part:

> (b) Subject to subsections (a) and (c) of this section, a plan may–
> (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due . . . .
> (c) Notwithstanding subsection (b(2) and applicable nonbankruptcy law–
> (1) a default with respect to, or that gave rise, to a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law . . . .

Section 1322(c)(1) was added to the Code by virtue of the Bankruptcy Reform Act of 1994 and was intended to overrule two cases from the Court of Appeals for the Third Circuit, *In re Roach*, 824 F.2d 1370 (3d Cir.1987) and *First Nat'l Fidelity Corp. v. Perry*, 945 F.2d 61 (3d Cir. 1991), so there should be no doubt that a debtor may cure a mortgage, in the very least, until the subject property is sold pursuant to state law.[3]

Once a plan providing for de-acceleration of a mortgage is confirmed, that provision is binding on both the creditor and the debtor pursuant to 11 U.S.C. § 1327(a). Thus, by agreeing to cure their default to the Defendants and to make future monthly mortgage payments, the Debtors cannot now argue that the Defendants are limited to post-judgment interest at 8 percent or that the Defendants violated the FDCPA merely by enforcing the terms of the parties' original contract.

Notwithstanding the clear and established law on this issue, Debtors insist that they had an "agreement" with the Defendants that they would pay $638.80 per month until the Judgment was paid and that the Defendants were to charge the Debtors the post-judgment rate of 8 percent. They

---

[3] In support of their position, the Defendants direct the Court to In re Clark, 738 F.2d 869 (7th Cir.1984) and In re Masters, 104 B.R. 83 (Bankr.S.D.Ind.1989) for the proposition that a debtor may cure and reinstate a mortgage by virtue of their plan, notwithstanding a foreclosure judgmen against the subject property. Those cases, while still correct statements of the law, were superseded by § 1322(b), as amended in 1994.

further allege that they were to pay Defendants a portion of their property taxes each month and that such amount was to be deposited into an escrow account. As evidence of this "agreement," Debtors attached to their Complaint copies of cancelled checks, made payable to Saxon, which contain notations that the checks were intended to cover their monthly payment per the parties' "bankruptcy agreement," as well as a portion of their property tax obligation.

As explained above, the parties' post-petition relationship is exclusively defined, as a matter of law, by the Plan and the terms of their original contract, and not by the Judgment or some other extraneous agreement. The Court further questions the Debtors' evidence that they had a another agreement with the Defendants. The checks themselves and the notations thereon do not prove the existence or terms of such an agreement. The notations merely refer to the "bankruptcy agreement." From the Court's perspective, that "agreement" *is* the Plan. Debtors' arguments to the contrary are simply unavailing. As such, the Court grants the Defendants' Motion as it relates to Counts II and III.

### Count IV: Indiana Home Loan Practices Act

In the final count of their Complaint, Debtors allege that the Defendants violated the Indiana Home Loan Practices Act (the "IHLPA"). The Defendants, in turn, argue that they do not meet the IHLPA's definition of "creditor" and that Count IV, therefore, fails to state a claim upon which relief can be granted. The Court agrees.

Indiana Code § 24-9-2-6(a) defines "creditor" for purposes of the IHLPA, as:

(a)(1) a person:
(A) who regularly extends consumer credit that is subject to a finance charge or that is payable by written agreement in more than four (4) installments; and
(B) to whom the debt arising from a home loan transaction is initially payable; or
(2) a person who brokers a home loan, including a person who:
(A) directly or indirectly solicits, processes, places, or negotiates home loans for

others;
(B) offers to solicit, process, place, or negotiate home loan for others; or
(C) closes home loans that may be in the person's own name with funds provided by others and that are thereafter assigned to the person providing funding for the loans.

Section Indiana Code § 24-9-2-6(b)(1) further provides that the term "creditor" does not include a loan servicer.

As alleged in the Complaint, the Note and Mortgage were initially payable to NovaStar and, thus, the Defendants do not meet the definition of creditor set forth in Indiana Code § 24-9-2-6(a)(1). Moreover, there are no allegations contained within the Complaint showing that the Defendants meet the definition of creditor set forth in Indiana Code 24-9-2-6(a)(2). Accordingly, the Court grants the Defendants' Dismiss as it relates to Count IV.

## Conclusion

Based on the foregoing, the Court concludes that Debtors' Complaint fails to state a claim against the Defendants upon which relief can be granted. Therefore, the Complaint is hereby dismissed.

###

Distribution:

Stephen B. Caplin
Mark William Sniderman
Brian L. Goins
UST
Chapter 13 Trustee